UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| SANDRO VUKOSAVLJEVIC, | ) | |
|---|---|---|
| Petitioner | ) | |
| v. | ) | 2:14-cr-00030-GZS |
| | ) | 2:19-cv-00253-GZS |
| UNITED STATES OF AMERICA, | ) | |
| Respondent | ) | |

## RECOMMENDED DECISION ON MOTION FOR WRIT OF CORAM NOBIS

In this action, Petitioner Sandro Vukosavljevic moves, pursuant to 28 U.S.C. § 1651, for a writ of error coram nobis[1] vacating his conviction. (Motion, ECF No. 102.) Following a guilty plea, Petitioner was convicted of two counts of the unlawful use of a communication facility; the Court sentenced Petitioner to thirty months in prison. (Judgment, ECF No. 94.)

Petitioner claims his attorney was ineffective because he failed to advise Petitioner properly of the immigration consequences of his guilty plea. (Motion at 5.) The Government asks the Court to deny the motion because at the plea hearing, the Court advised Petitioner of the immigration consequences and thus Petitioner cannot demonstrate prejudice by counsel's alleged failure to advise. (Answer, ECF No. 105.)

---

[1] "The writ of error coram nobis originated in the sixteenth century as a means to allow a trial court to correct its own mistakes of fact." *United States v. Sawyer*, 239 F.3d 31, 37 (1st Cir. 2001) (footnote omitted). "In Latin, 'coram nobis' means 'before us.' Originally, the petition was submitted in the court of the King's Bench, or 'before us' in the sense of being before the King." *Id.* at 37 n.4.

Following a review of the record and after consideration of Petitioner's motion and the Government's response, I recommend the Court grant the Government's request and deny Petitioner's motion.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On March 11, 2014, Petitioner was indicted on one count of conspiracy to distribute and possess with intent to distribute cocaine and three counts of unlawfully using a communication facility in committing, causing, and facilitating the conspiracy. (Indictment, ECF No. 3.)

On May 27, 2015, the Court held a hearing to address a motion to withdraw as counsel from Petitioner's attorney, among other matters. (Min. Entry, ECF No. 63.) Petitioner explained that there was tension with his attorney because he was "trying to have me plea out" while "I still believe I'm innocent . . . ." (Hearing Transcript at 16-17, ECF Nos. 100, 102-6.) Petitioner reported that friends and family members had shown a willingness to raise money for him to hire an attorney. (*Id.* at 17-18.) According to Petitioner:

> So sometimes I don't know what the best decision is for me to make, so I just feel like maybe if my Bosnian community wants to help me possibly stay in the country and have somebody else represent me because I don't feel comfortable that Mr. Dyhrberg can, you know, take me to where I want to be, the next step . . . .

(*Id.* at 18-19.) Petitioner reiterated that he did not want to plead guilty and maintained his innocence. (*Id.* at 19.)

On May 29, 2015, Petitioner pled guilty to two counts of the indictment (Counts 2 & 3, Unlawful Use of a Communication Facility). (Change of Plea Hearing, ECF No. 71.)

At the change of plea hearing, the Court explained, "[I]f you're not a United States citizen, you may be removed from the United States, denied citizenship and denied readmission to the United States in the future; do you understand?" (Change of Plea Hearing Transcript at 6-7, ECF No. 101.) Petitioner replied, "Yes, Your Honor, I do." (*Id.* at 7.)

After the plea and before sentencing, Petitioner told his pretrial services officer that he had become depressed since meeting with an immigration lawyer in early July 2015 because the lawyer told Petitioner that he would be deported. (Presentence Investigation Report ¶¶ 5, 53A, 58.) On October 2, 2015, the Court sentenced Petitioner to thirty months imprisonment followed by one year of supervised release. (Judgment at 2-3.) According to the Government, Petitioner was released from prison and began serving his period of supervised release on November 27, 2017. (Answer at 2.)

After his conviction, Petitioner asserts that he was classified as an "aggravated felon" subject to mandatory deportation and will be prohibited from returning to the United States. (Affidavit, ECF No. 102-1.)[2] Petitioner, who is a citizen of Bosnia Herzogovina and came to the United States in 1994 as a refugee, filed an application seeking asylum, withholding of removal, and protection under the Convention Against Torture. (Immigration Order at 1-2, ECF No. 102-4)  On June 6, 2018, the Department of Justice (DOJ) Immigration Judge denied Petitioner's claims and ordered that he be removed from the United States to Bosnia Herzegovina. (*Id.* at 15.) The DOJ Board of Immigration

---

[2] Because a conviction for an "aggravated felony" bars most defenses to deportation, permitting only a few very narrow exceptions and making "deportation virtually certain," *see e.g. United States v. Bonilla*, 637 F.3d 980, 982-84 (9th Cir. 2011), courts have labeled such results "presumptively mandatory," *id.*, or simply "mandatory," *Lee v. United States*, 137 S. Ct. 1958, 1962, 1963, 1967 (2017).

3

Appeals upheld the decision on November 6, 2018. (Immigration Appeal Order, ECF No. 102-5.) Petitioner sought judicial review of the decision; on July 23, 2019, the Third Circuit Court of Appeals found no error with the final removal order. *Vukosavljevic v. Attorney General of The United States*, 782 F. App'x 192 (3d Cir. 2019).

On June 3, 2019, Petitioner filed his motion for a writ of error coram nobis. (Motion, ECF No. 102.) Petitioner asserts that counsel informed him that there may be immigration consequences of a guilty plea, and counsel instructed him that he would need to hire a separate immigration attorney after pleading guilty, but counsel did not advise Petitioner that the guilty plea would subject him to mandatory deportation and a ban on re-entry. (Affidavit at 1.) Petitioner maintains that he would not have pled guilty and would have gone to trial if he had been informed that he faced mandatory deportation. (*Id.*)

## Legal Standards

Congress constructed a "comprehensive remedial scheme for post-conviction relief" in 28 U.S.C. § 2255 which does not replace but operates against the backdrop of "the entire array of common-law writs authorized under the All Writs Act, 28 U.S.C. § 1651." *Trenkler v. United States*, 536 F.3d 85, 96-97 (1st Cir. 2008). Where a statute like § 2255 "specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling," but the "All Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute." *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985). Because the All Writs Act provides courts with flexible, equitable powers anchored in judicial discretion, "[a]n emphasis on restraint

4

is ingrained: the extraordinary nature of the writs implies that they should be issued sparingly." *United States v. George*, 676 F.3d 249, 253 (1st Cir. 2012).

"[T]he writ of error coram nobis, in its modern form, is ordinarily available only to a criminal defendant who is no longer in custody," *Trenkler*, 536 F.3d at 98, "as a remedy of last resort for the correction of fundamental errors of fact or law." *George*, 676 F.3d at 253. "[A] coram nobis petitioner must explain his failure to seek earlier relief from the judgment, show that he continues to suffer significant collateral consequences from the judgment, and demonstrate that the judgment resulted from an error of the most fundamental character." *Id.* at 254. "Even if the petitioner meets all three of the conditions in the coram nobis eligibility test, the court retains discretion to grant or deny the writ, depending on the facts and circumstances of the individual case." *Murray v. United States*, 704 F.3d 23, 29-30 (1st Cir. 2013).

Constitutionally ineffective assistance of counsel can serve as the fundamental error underlying a coram nobis petition. *Williams v. United States*, 858 F.3d 708, 712 (1st Cir. 2017) (citing *United States v. Castro-Taveras*, 841 F.3d 34, 36-37, 52-53 (1st Cir. 2016)). In order to establish an ineffective assistance of counsel claim, the petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Strickland v. Washington*, 466 U.S. 668, 688 (1984). The petitioner must also demonstrate that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. A district court reviewing a claim of ineffective assistance of counsel

5

need not address both prongs of the *Strickland* test because a failure to meet either prong will undermine the claim. *Id.* at 697.

## DISCUSSION

The Supreme Court has held that under the Sixth Amendment, "criminal defense attorneys must inform non-citizen clients of the risks of deportation arising from guilty pleas." *Chaidez v. United States*, 568 U.S. 342, 345-46 (2013) (discussing *Padilla v. Kentucky*, 559 U.S. 356 (2010).) Attorneys can provide deficient performance by failing to notify defendants when they face deportation, or by affirmatively misadvising defendants concerning the immigration consequences of a guilty plea. *Id.* at 355-56; *United States v. Castro-Taveras*, 841 F.3d 34, 41-51 (1st Cir. 2016) (distinguishing between failure-to-advise claims and affirmative misadvice claims). In order to establish prejudice from counsel's deficient performance, "the defendant must show that there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial," *Hill v. Lockhart*, 474 U.S. 52, 59 (1985), or else would have accepted another available and more favorable plea offer, *Missouri v. Frye*, 566 U.S. 134, 147 (2012).

Petitioner asserts that he would have proceeded to trial if his attorney had advised him of the mandatory consequences of a guilty plea. The Supreme Court has acknowledged that some defendants reasonably may choose to risk trial and a longer sentence for declining to accept responsibility because they might place "paramount importance" on avoiding deportation. *Lee v. United States*, 137 S. Ct. 1958, 1968 (2017). The Supreme Court cautions, however, that "[c]ourts should not upset a plea solely because

6

of *post hoc* assertions from a defendant about how he would have pleaded" and "should instead look to contemporaneous evidence to substantiate a defendant's expressed preferences." *Id.* at 1967.

The Government, citing *Williams v. United States*, 858 F.3d 708 (1st Cir. 2017), argues that the district court's warning at the plea hearing forecloses a finding of prejudice. In *Williams*, the First Circuit considered a coram nobis petition following a guilty plea involving a court warning to a defendant informing him that "it is possible that you could be deported." *Id.* at 717. The First Circuit concluded in part that "Petitioner suffered no prejudice from his attorney's alleged misadvice because the district court itself informed Petitioner that he faced immigration consequences." *Id.* at 717. In conducting its prejudice analysis, the *Williams* Court appeared to give significant and perhaps controlling weight to the district court's warning, as have other courts of appeals. *See e.g.*, *United States v. Kayode*, 777 F.3d 719, 728-29 (5th Cir. 2014); *United States v. Fazio*, 795 F.3d 421, 423-24, 426-27 (3d Cir. 2015).

Petitioner, in contrast, cites authority from other circuit courts which were apparently more receptive to other petitioners' efforts to establish prejudice when they faced mandatory deportation and the district court's warnings referenced only a risk or chance of deportation. *See e.g.*, *United States v. Swaby*, 855 F.3d 233, 240-44 (4th Cir. 2017); *United States v. Rodriguez-Vega*, 797 F.3d 781, 790-91 (9th Cir. 2015); *Dat v. United States*, 920 F.3d 1192, 1196 (8th Cir. 2019); *Doe v. United States*, 915 F.3d 905, 915 (2d Cir. 2019); *see also United States v. Murillo*, 927 F.3d 808, 817 n.4 (4th Cir. 2019)

7

(acknowledging possible range of opinions among circuit courts on the importance of boilerplate warnings for prejudice analysis).

While different courts of appeal have varied on the significance of a court's warning, the variance is arguably the product of the circumstances of each case rather than a fundamental disagreement regarding the applicable standard. Nevertheless, the plain language of *Williams* appears to support the State's argument that under First Circuit precedent, the Court's warning precludes a finding of prejudice. Because *Williams* was decided on procedural as well as substantive grounds, however, the prejudice analysis was limited and *Williams* did not present the specific issue in this case – whether a court's standard admonition is sufficient to prevent prejudice to a defendant who is subject to mandatory deportation upon a guilty finding. *Williams* did not involve an aggravated felony conviction, and thus the First Circuit had no reason to consider the impact of the court's warning on the prejudice analysis when deportation is near certain. Even if *Williams* is not dispositive of Petitioner's claim, however, an assessment of Petitioner's claim in accordance with recent Supreme Court precedent on an ineffective assistance claim involving mandatory deportation reveals that Petitioner cannot establish the necessary prejudice.

As explained above, in *Lee*, the Supreme Court directs courts to look to "contemporaneous evidence to substantiate a defendant's expressed preferences," *id.* at 1967, in their assessment of prejudice. Importantly, *Lee*, which involved mandatory deportation and counsel's advice that specifically undermined the trial court's warnings,

does not require a finding of prejudice whenever a petitioner asserts an ineffective assistance claim where deportation is mandatory.

When the case-specific analysis contemplated by *Lee* is applied in this case, the evidence of Petitioner's family ties, the length of his residence in the United States, his statements during the hearing on counsel's motion to withdraw, and his perception of the risks he faced in Bosnia due to his race and religion demonstrate that potential deportation was of concern to Petitioner. The other contemporaneous evidence that Petitioner presents, however, does not support a finding that avoiding deportation was of "paramount importance" and that Petitioner would not have pled guilty had he been explicitly advised that deportation was mandatory. *Lee v. United States*, 137 S. Ct. at 1968. Petitioner's statements during the hearing on counsel's motion to withdraw demonstrate a level of concern with avoiding deportation, but the evidence fails to establish "that avoiding deportation was *the* determinative factor for him" or that "deportation after some time in prison was not meaningfully different from deportation after somewhat less time." *Lee*, 137 S. Ct. at 1967. In fact, Petitioner's statement, two days before he entered his plea, regarding his belief that other Bosnians in the community wanted to help him stay in the country reveals that Petitioner was aware that he would likely be deported after conviction. Petitioner's plea with the knowledge of deportation, which knowledge was consistent with the trial court's warning during the plea colloquy, directly contradicts Petitioner's contention that he would have proceeded to trial if he had received a different warning. In

addition, unlike in *Lee*, the record lacks any evidence to suggest that counsel's advice minimized or undermined the effectiveness of the court's warning.[3]

In sum, under the principles articulated by the First Circuit in *Williams* and the Supreme Court in *Lee*, given the Court's plea colloquy warning regarding deportation and re-entry, given Petitioner's acknowledgement of the immigration consequences two days before the plea, and given that Petitioner has not provided convincing contemporaneous evidence that he would have proceeded to trial to avoid the potential immigration consequences, Petitioner cannot show that he was prejudiced as a result of his attorney's alleged failure to advise him of the mandatory immigration consequences of his guilty plea. Petitioner, therefore, cannot prevail on his motion for a writ of error coram nobis.

## CONCLUSION

Based on the foregoing analysis, an evidentiary hearing is not warranted. In addition, I recommend that the Court deny Petitioner's motion for a writ of error coram nobis. I further recommend that the Court deny a certificate of appealability pursuant to Rule 11 of the Rules Governing Section 2255 Cases because there is no substantial showing of the denial of a constitutional right within the meaning of 28 U.S.C. § 2253(c)(2).

---

[3] In *Lee*, counsel told the petitioner that he "didn't need to worry about [deportation]." 137 S. Ct. at 1963. When the district court warned the petitioner that a conviction could result in deportation, the petitioner responded that he did not understand and consulted with his attorney. *Id*. at 1968. Counsel then assured the petitioner that the judge's statement was a "standard warning." *Id*. The Supreme Court acknowledged that some courts have determined that a court's plea colloquy might undermine a prejudice claim based on counsel's misadvice, but noted that *Lee* presented an ineffective assistance claim that involved advice from counsel that "specifically undermin[ed] the judge's warnings." *Id*. at 1968 n.4. As the Supreme Court noted, there was no suggestion that the plea colloquy cured any prejudice resulting from counsel's advice that undermined the court's warnings. *Id*.

## **NOTICE**

A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within fourteen (14) days of being served with a copy thereof. A responsive memorandum shall be filed within fourteen (14) days after the filing of the objection.

Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.

/s/ John C. Nivison
U.S. Magistrate Judge

Dated this 4th day of December, 2019.